UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STACY HERZLINGER, *on behalf of herself*
*and all others similarly situated*

                                Plaintiff,

                                                      Case No.: 09-CIV-0192 (SCR)(PED)

       -against-

MARK L. NICHTER,
MARK L. NICHTER, ESQ., P.C.,
THE LAW OFFICES OF MARK L. NICHTER,
TRANS-CONTINENTAL CREDIT AND
COLLECTION CORP. and
STUART S. BLOOM,

                                Defendants.
------------------------------------------------------------x

**DECLARATION IN SUPPORT OF**
**OBJECTION TO JANUARY 11, 2010, ORDER**
**OF MAGISTRATE JUDGE PAUL E. DAVISON**
**AND REQUEST FOR RESCISSION THEREOF**

      SERGEI LEMBERG, an attorney duly admitted to the Bar of this Court and attorney of record for the Plaintiff, declares as follows under penalty of perjury:

**Preliminary Statement**

      1.    Plaintiff seeks vacatur of Magistrate Judge Davison's order requiring her counsel to proceed with the deposition of Mark L. Nichter only three (3) hours after the discovery during the deposition of a loaded, concealed weapon in the possession of co-defendant Stuart Bloom, the principal of defendant Trans-Continental Credit and Collection, Inc. Plaintiff submits that the Magistrate's order requiring that the deposition proceed based on supposed assurances that the gun has been secured in Mr. Bloom's vehicle should be overturned and that Mr. Nichter be ordered to return to the location of his law practice (White Plains, New York) to be examined.

## **Plaintiff's Complaint**

2. The Plaintiff, Stacey Herzlinger, a Washington DC police officer, brought this suit on account of violations by the Defendants of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Ms. Herzlinger's claims against defendants originate from her receipt of a letter on the letterhead of defendant Trans-Continental Credit and Collection Corp. ("TCC") in an envelope with the return address of Mark L. Nichter ("Nichter[1]"). A copy that letter (the "Letter") is annexed as Exhibit A to Plaintiff's First Amended Complaint (the "Complaint").

3. Plaintiff alleges that the defendants are engaged in a masquerade whereby consumers are led to believe that the TCC/Nichter operation is a law firm when in fact it is not. Plaintiff further alleges that the Letter, recently identified as a form "Code 61," constitutes an improper threat of suit, in violation of the FDCPA.

4. After months of subterfuge on the part of the Defendants, including overt misrepresentations to the Court,[2] Plaintiff finally confirmed through discovery what she believed to be true all along -- the Letter is a form letter used regularly by both TCC and Nichter, identified by each of the Defendants as "Code 61."

---

[1] Unless the context requires otherwise, the term "Nichter" refers to defendants Mark L. Nichter, Mark L. Nichter, Esq. P.C. and The Law Offices of Mark L. Nichter, singularly, jointly or in combination with one another.

[2] The following are only some examples of the misrepresentations made:

(a) **August 5, 2009** Transcript of proceedings before the Court (pp.22-23):
MR. SKLARIN: The October 23, 2008 letter, my understanding is it's a specifically drafted letter by Mr. Burn as to this date….
THE COURT: And verify that, by individually drafted, you don't simply mean, you know, name and amount owed and debtor, but the operative language as well.

(b) **October 14, 2009** Letter from Richard Sklarin. "We have been advised that Ray Bern personally drafted the October 23, 2008 letter to your client from his own Trans-Continental computer station."

(c) **October 21, 2009** Transcript of Proceedings before the Court (p.23):
MR. ELLIOT: …. what I did do is ask Mr. Nichter whether he uses a form letter which looks like the letter in question. He said he does not have such a form letter that he uses. …
MR. SKLARIN: And I went to Mr. Bern. I asked him specifically, myself face to face. He drafted this from his computer. The October 23, 2008 letter, he personally drafted from his computer. That's what he said.

5. What more, the Code 61 letter is hard-coded into the defendants' computer system and can be printed interchangeably on the either TCC or Nichter letterhead. A Code 61 letter reads as follows:

- if printed on TCC letterhead:

   **We strongly urge you to either call us yourself or have your attorney call within five (5) days. Without any doubt this one call may save you time and money.**

   **If we do not receive a call within the allotted time we will have few alternatives but to proceed with further action**

- if printed on Nichter letterhead:

   **We strongly urge you to either call us yourself or have your attorney call within five (5) days. Without any doubt this one call may save you time and money.**

   **If we do not receive a call within the allotted time we will have few alternatives but to proceed with our recommendation for legal action.**

6. The Defendants have been forced to concede that thousands of Code 61 letters were transmitted to consumers who may be part of a class of plaintiffs.

7. The Letter received by Ms. Herzlinger, a Code 61, was printed on TCC letterhead and was, therefore, in TCC form but was mailed in an envelope on which was imprinted with Nichter's return address.

### Defendants' Disclosure Charade

8. This case has been wrought with hotly contested discovery disputes due to the Defendants' wholesale refusal to recognize and comply with their disclosure obligations, necessitating multiple requests for intervention by Magistrate Judge Davison. Among other things, until they could no longer justify doing so, the Defendants steadfastly denied that the Letter was a form letter used by either TCC or Nichter. The Defendants instead claimed that the

text of the letter was individually crafted by a single collector, Raymond Bern, who is jointly employed by TCC and Nichter. Accordingly, each defendant unqualifiedly denied the allegations contained in paragraph 23 of the Amended Complaint which alleges, on information and belief:

> …..the Letter is an example of a form letter, substantially identical to thousands of letters sent to consumers across the nation (the "Letters") by the Defendants.

9. Defendants' charade continued through multiple misrepresentations to our firm and to Magistrate Judge Davison in which TCC and Nichter, through their respective counsel, insisted that the Letter was <u>not</u> a form letter. The message clearly conveyed to the Court and to Plaintiff, both expressly and impliedly, was that Ms. Herzlinger was the lone recipient.

10. In November 2009, our firm received an inquiry from a potential new client concerning the content of a letter he had received from "Mark L. Nichter, P.C." We were amazed to learn that the letter received by this new client was substantially identical to the Letter which is the subject of Ms. Herzlinger's Complaint.

11. We promptly disclosed our remarkable discovery to defense counsel, Messrs. Sklarin and Elliot. The Defendants, through their respective counsel, responded during our November 23, 2009, conference before Magistrate Judge Davison by finally acknowledging for the first time that the Letter "is a form letter which is available for use" by collectors working for the Defendants. [11/23/2009 Tr. at 9].

12. Mr. Nichter insists that he maintains an active law practice housed in space subleased from TCC at 44 South Broadway, White Plains. It is undisputed that Nichter employs more than forty (40) individuals who work from the White Plains location and supposedly corresponds daily to thousands of consumers from that address. The sheer volume of activity

emanating from his office in White Plains fuels the resulting conundrum.

13. Notwithstanding the egregious discovery abuses thus far, Defendants have not been sanctioned; nor has inquiry been made into the blatant misrepresentations Defendants' counsel has made to the tribunal.

### Commencement of Depositions

14. Party depositions[3] finally began on November 30, 2009 with the deposition of Stacey Herzlinger.[4] Examinations of the Defendants began on December 8, 2009, with the deposition of Raymond Bern. Through Mr. Bern's testimony the complete truth about the Letter and its identification within the TCC/Nichter nomenclature as Code 61 was finally revealed.

15. Mr. Bern, speaking about the genesis of both the Letter and the substantially similar letter received by our new client testified as follows [Bern Tr. at 159-160]:

> Q. Does [the Letter], the body of the letter, have a particular name within your computer system?
> A. No, it's just known as 61.
> Q. It's known as 61?
> A. Yes.
> Q. And the [substantially similar] letter that's Bern 6, this one, does that have a particular name?
> A. 61.
> Q. This is also 61?
> A. Yes.

16. Plaintiff next deposed TCC/Nichter joint employee Alicia Kise, followed by the deposition of Larry Fozard, TCC's M.I.S. Manager.

17. Defendant Stuart Bloom, who is the principle officer of TCC, did not personally attend *any* of the foregoing depositions, party or non-party.

---

[3] Several non-party depositions were taken by the Plaintiff during October and November.
[4] Ms. Herzlinger, a police officer, traveled from the District of Columbia, unarmed and without her uniform, this being a personal, private matter.

### **Bloom's Loaded Handgun**

18. The deposition of defendant Mark L. Nichter was to begin at 10:00 a.m. on January 11, 2009, at the offices of Miranda Sambursky Slone Sklarin Verveniotis LLP, counsel for TCC and Bloom, located at 570 Taxter Road, Elmsford, New York. I arrived with my associate, Jody Burton, expecting to begin at the scheduled time. Mr. Nichter arrived late, delaying the examination until 10:35 a.m., lamenting (off the record) a long commute from New Jersey.

19. For the first time in the course of these proceedings, Stuart Bloom chose to exercise his right to attend the deposition of Mr. Nichter.

20. During a break shortly before 12:30 p.m., a terrified Ms. Burton, told me that Mr. Bloom had was wearing an ankle holster with a (presumably) loaded firearm in such a fashion as to make it visible to her that he had a firearm. A break was taken, during which time we confirmed that Mr. Bloom *did* have a loaded firearm on his person. Although Mr. Bloom showed me a license which appeared to authorize Mr. Bloom to carry the weapon, neither he nor his counsel disclosed that a concealed weapon was brought by Mr. Bloom into the deposition room.

21. During the same break, I asked Mr. Bloom whether he had ever used the weapon, and he responded that he "had not yet." Whether the response was fully or paratially in jest was not clear to me at the time. What became apparent, however, is that Defendants are playing for keeps.

22. I contacted the Chambers of Magistrate Judge Davison and was able to schedule a conference call with the Magistrate Judge for 2:30 p.m. In the meantime, the parties broke for lunch since neither I nor Ms. Burton was comfortable proceeding in the presence of a loaded weapon.

23. In the meantime, I made inquiries pertaining to Mr. Bloom's license to carry a concealed weapon and was advised by the Westchester County Clerk's office that the license may be issued to a non-resident of New York for "employment purposes" only.

### The Conference Call and the Objectionable Ruling

24. The conference call began at approximately 2:30 p.m. and concluded at approximately 3:23 p.m. I participated by mobile phone since I could not escape the safety concerns which prompted me to initiate the conference call in the first instance. A copy of the conference transcript, which contains Magistrate Judge Davison's Ruling concerning the deposition of Mark Nichter is annexed hereto and filed as a Exhibit 1 herewith.

25. During the conference, I expressed to Magistrate Judge Davison my concern about continuing a deposition in what has proven to be a highly contentious and adversarial case with even the threat of a weapon being brought into the room. I asked for an Order which would reconvene the deposition at the Courthouse on a different day. Although Mr. Bloom stated that he had secured the weapon in his vehicle, I did not have the ability to verify that he had no other weapons, and I was not satisfied that Mr. Bloom would leave his weapon safely in his truck for the duration of the examination. Mr. Bloom steadfastly refused the offer to invite the Elmsford police department to examine him for other weapons and to verify that he was carrying the weapon within the scope of his licensure on the ground that "it would leave a record."

26. Denying the request, Judge Davison ruled instead that we should remain at Mr. Sklarin's office and proceed with the examination of Mr. Nichter, directing that the examination could be continued to another date only on condition that Plaintiff pay the expenses associated with Mr. Nichter's return to White Plains for the continued examination. Judge Davison did direct, however, that all subsequent depositions be held at the Courthouse.

27. The following exchange is found at pages 105 through 108 of the annexed

conference transcript (Exhibit 1):

> THE COURT: Mr. Lemberg, I don't see why Mr. Bloom's willingness to secure the firearm in his car or whatever and counsel's representation which you can repeat on the record that nobody in the room is armed, I don't see why that doesn't resolve this situation in the absence of some indication of hostilities of some kind. I think it would be perfectly appropriate to verify on the record when you resume the deposition that nobody is carrying a firearm. But I don't see in light of everything that's been said here why the deposition can't proceed in an attorney's office. And I think you should go in there to verify upon asking and I would direct everybody to respond on the record with regard to this and verify nobody's carrying a firearm.
> MR. SKLARIN: Well, that's absolutely fine by us, Your Honor. Mr. Bloom is here. I'll ask him in front of Your Honor. Mr. Bloom, where is your firearm that you had before?
> MR. BLOOM: My handgun's been locked in my vehicle since 12:30.
> MR. LEMBERG: Do you have any other firearms?
> MR. BLOOM: Not with me.
> MR. LEMBERG: Your Honor, I respectfully submit to you that I am not comfortable going back in there. I asked Mr. Bloom off the record whether he has ever used a firearm and the answer was, not yet. I am not comfortable going in there. I'm not able to search Mr. Bloom. I wouldn't pretend to be in that position. And the mere fact that the gun was there without it being disclosed I believe its harassment [and] intimidation.
> MR. SKLARIN: I didn't know he had one.
> THE COURT: Mr. Lemberg, if it was brandished or displayed or somehow brought to your attention I might be inclined to agree with you. But it was concealed and only inadvertently apparently discovered. So it's hard for me to see that it was there for intimidation purposes. Do you want to pay for Mr. Nichter's time to come back to reconvene this? …….
> MR. LEMBERG… Does plaintiff's counsel want to pay for Mr. Nichter's time?
> THE COURT: Yes.
> MR. LEMBERG: No, Your Honor. I will suspend the deposition. I am not going back in there, Judge. This ruling has been recorded and we will undertake whatever further discovery that needs to happen in this case without the deposition of Mr. Nichter.
> THE COURT: Very well.

28. In the absence of what I viewed as a viable resolution, I suspended the deposition under protest to seek a ruling from this Court. Due to the advanced hour, it was not feasible to relocate to the White Plains Courthouse that day. I knew that while getting dressed that day, Mr. Bloom chose to wear the weapon, he chose to bring it with him to the deposition, then chose to allow it to be seen. Under the circumstances, I was simply unwilling to risk even the remote possibility that Mr. Bloom would use it. Moreover, I felt that Defendants' representation

pertaining to the weapon being "secure" should have been given no more weight that their earlier representations regarding the Code 61 letter, *i.e.* that it was not a "form" letter.

29. Plaintiff respectfully asserts that Judge Davison's ruling, requiring Plaintiff to underwrite the expenses associated with Mr. Nichter's return to White Plains to be deposed, is unreasonable, unwarranted under all of the circumstances and constitutes an abuse of discretion. Neither Plaintiff nor the Lemberg firm contributed to the circumstances which resulted in suspension of the examination of Mr. Nichter. While conducting a cross-examination, Plaintiff's counsel should not be required to frisk parties attending a deposition or be concerned about a possible retrieval of a weapon from a vehicle. Mr. Bloom's refusal to allow the police to come underscores the possibility that he had other weapons on his person or that he was carrying the weapon outside the permissible scope of his license.

30. Magistrate Davison improperly prioritized the burden on Mr. Nichter over the safety concerns of Plaintiff's counsel. Mr. Nichter's assertion that returning to White Plains to conclude his examination would impose an "unreasonable burden" is belied by his adherence to the proposition that he actually maintains a place of business and law practice in offices sublet from TCC at 44 S. Broadway, White Plains. According to Mr. Nichter, he physically shows up for work at his White Plains office "as often as needs to be" and spends the night when necessary with either his brother or mother, both of whom have residences in Manhattan [Nichter Tr. at 77-78]. There is clearly no reason to accommodate Mr. Nichter's alleged "burden" associated with travel from Pilesgrove, New Jersey.

31. I additionally submit herewith as Exhibit 2 a recent article from the Internet about the presence of a weapon in a deposition, which demonstrates that my reaction and request were in line with what might be expected.

**Conclusion**

32.    For the reasons set forth above, the Plaintiff respectfully seeks an Order vacating and rescinding the subject ruling and permitting the resumption, without cost to the Plaintiff, of Mr. Nichter's deposition to be held at the Federal Courthouse in White Plains, New York.

Dated:  Stamford, CT
       January 25, 2010

                                             /s/ Sergei Lemberg
                                             _____
                                             Sergei Lemberg