```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
                                                      :
STACEY HERZLINGER, on behalf of                       :
herself and all others similarly situated,            :
                                                      :   CASE NO. 7:09-CV-00192
                     Plaintiff,                       :
                                                      :
vs.                                                   :   OPINION & ORDER
                                                      :   [Resolving Docs. 119, 121, 127][1/]
MARK L. NICHTER,                                      :
MARK L. NICHTER, P.C., THE LAW                        :
OFFICES OF MARK L. NICHTER,                           :
TRANS-CONTINENTAL CREDIT AND                          :
COLLECTION CORP., AND                                 :
STUART S. BLOOM                                       :
                                                      :
                     Defendants.                      :
                                                      :
--------------------------------------------------------
```

JAMES S. GWIN,[2/] UNITED STATES DISTRICT JUDGE:

In this putative class action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Plaintiff Stacey Herzlinger moves for partial summary judgment on Counts I and II of her complaint. [Doc. 119.] Defendants Mark L. Nichter, Mark L. Nichter, P.C., and The Law Offices of Mark L. Nichter (collectively, the "Nichter Defendants"), and Trans-Continental Credit and Collection Corp. and its president Stuart S. Bloom (collectively, the "Trans-Continental Defendants") oppose Plaintiff's motion and also move the Court for summary judgment on all Counts. [Doc. 121; Doc. 127.]

---

[1/]Pursuant to this Court's order that the parties refile all documents in text-searchable format, the parties' motions also appear elsewhere on the docket.

[2/]The Honorable James S. Gwin of the United States District Court for the Northern District of Ohio, sitting by designation.

Case No. 7:09-CV-00192
Gwin, J.

For the following reasons, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS IN PART** and **DENIES IN PART** the Defendants' motions.

## I. Background

Plaintiff Stacey Herzlinger brings this putative class action on behalf of herself and all other debtors who received certain debt-collection correspondence from the Defendants. The genesis of this case is a debt-collection letter, written on Trans-Continental letterhead but enclosed in a Nichter envelop, that a shared employee of the Defendants mailed to Plaintiff Herzlinger. According to the Plaintiff, this mailing violated the FDCPA in five ways.

Defendant Trans-Continental is a nationwide debt-collection agency; Defendant Stuart Bloom is its President and has been since he founded the company in 1974. [Doc. 123-8 at 4.] Defendant Mark Nichter is an attorney whose law offices—Defendants Mark L. Nichter, P.C. and The Law Offices of Mark Nichter—"assist" Trans-Continental in the collection of debts, upon referral. [Doc. 115 at 7.] Although the Trans-Continental and Nichter Defendants are formally distinct, they share equipment, software, debt collectors, support staff, clients, accounts, collection templates, an operating manual, and an office. [Doc. 135 at 17.] Indeed, the Nichter Defendants' share all but one of their fifty-five employees with Trans-Continental. [Doc. 135 at 16.] These shared employees work primarily for Trans-Continental, devoting thirty-five hours to Trans-Continental and five hours to the Nichter Defendants, on average per week. [Doc. 108 at 29 n.18; Doc. 80 at 13.] The Trans-Continental Defendants have seventeen additional, unshared employees. [Doc. 80 at 13.]

Ray Bern, a debt collector who works for both the Nichter and Trans-Continental Defendants, sent Plaintiff Herzlinger a debt collection letter dated October 23, 2008 demanding

Case No. 7:09-CV-00192
Gwin, J.

payment in the amount of $21,537.55, owing to Greenwich Hospital.  [Doc. 115 at 2; Doc. 127-1 at 3.]  The letter, typed on Trans-Continental letterhead, reads in whole:

> DEAR STACEY
>
> It is the policy of this company wherever practical, to discuss with all parties involved, alternatives to credit reporting and other additional remedies.  Thus far, we have been unable to do so with you.
>
> We strongly urge you to either call us yourself or have your attorney call within five (5) days on the above referenced matter.  Without any doubt this one call may save you time and money.
>
> If we do not receive a call within the allotted time we will have few alternatives but to proceed with further action.
>
> This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.
>
> VERY TRULY YOURS,
>
> [/s/]
>
> RAYMOND A. BERN

[Doc. 120-11 at 3 (the "Herzlinger Letter").]  It is undisputed that Bern sent the Herzlinger Letter in an envelop stamped "CONFIDENTIAL" with a return address of "The Law Office of Mark L. Nichter."  [Doc. 120-12 at 2-3; Doc. 115 at 2; Doc. 127-1 at 5.]

According to the Trans-Continental Defendants, then eighty-one year old Bern kept envelopes for both Trans-Continental and The Law Offices of Mark L. Nichter at his personal work station.  And despite company procedures to prevent errors associated with mailings, Bern mistakenly included the Herzlinger Letter in a Nichter envelope, and Bern's supervisors failed to catch it before mailing.  [Doc. 127-1 at 3-5.]  This error, the Trans-Continental Defendants continue, "was an isolated occurrence."  [Doc. 128 at 22.]  Likewise, the Nichter Defendants say Bern's mishandling was an unfortunate, one-time mistake, and that no other debtors have come forward to

Case No. 7:09-CV-00192
Gwin, J.

allege a similar juxtaposition. [Doc. 115 at 17.] Responding, Plaintiff says this was no mistake: to coerce debtors to pay up, the Defendants' employees falsely represent to debtors—Plaintiff herself just one of many—that the Nichter Defendants' law office is already involved in the collection. [Doc. 135 at 4.]

Bern, like most of the Defendants' employees, does collection work for both the Trans-Continental and Nichter Defendants.  For example, the "Trans-Continental Credit & Collection Corp. Operating Manual" instructs employees on how to collect on behalf of The Law Offices of Mark Nichter:

> My name is _____, I am with The Law Office of Mark Nichter[.]  We represent _____ (Client Name), they have turned over an account(s) to us in the amount of ($) _____ [.]
>
> We are currently reviewing your account for suit and before we proceed further, I wanted to give you the courtesy of a phone call to see if you wanted to clear this matter up on a voluntary basis.
>
> . . . .
>
> <u>If calling in behalf of Transcontinental Collection and Credit Legal Department</u>
> Trans-Continental Credit
> Accounting Dpt.
> P.O[.] Box 5055
> White Plains, NY 10602
>
> <u>If calling in behalf of Law Office of Mark Nichter</u>
> Law offices of Mark Nichter
> 44 South Broadway Suite 402
> White Plains NY 10601
>
> Remember that depending on where you are calling from (either legal department of TCC or Mark Nichter's office will determine which address to use.)

[Doc. 80-14 at 10, 23.]  It continues, "When calling a debtor, the collector will be calling from an attorney's office of the legal department of a collection agency.  At no time the collector can claim he or she is a lawyer.  If asked, the collector will say he or she is a legal associate for such firm."

-4-

Case No. 7:09-CV-00192
Gwin, J.

[Doc. 80-14 at 8.]

At the time Bern mailed the Herzlinger Letter on October 23, 2008, creditor Greenwich Hospital had not yet authorized Trans-Continental to sue on its behalf to collect the Herzlinger debt. [Doc. 135 at 13; Doc. 123-7 at 2.] Four months later, Trans-Continental informed Greenwich Hospital that its collection efforts had been unsuccessful and requested authorization to sue, which the Hospital granted on February 18, 2009. [Doc. 120-22 at 2.] Defendant Stuart Bloom, Trans-Continental's President, says Herzlinger's debt was appropriate for litigation because "the balance was substantial and Ms. Herzlinger was regularly employed as a Virginia police officer . . . ." [Doc. 123-8 at 4.] After receiving authorization to sue, Trans-Continental referred the matter to a local Virginia attorney who ultimately commenced suit in Virginia state court. [Doc. 123-8 at 4.]

Against this backdrop, Plaintiff brings five counts against the Defendants, all predicated on her assertion that the Nichter Defendants and the Trans-Continental Defendants (including Stuart Bloom, personally) operated an illicit "joint masquerade" and are jointly and severally liable. To that end, Plaintiff contends that the Defendants violated the FDCPA in five ways: (1) § 1692e(5) by threatening legal action not intended to be taken; (2) § 1692e(10) by transmitting false and misleading information in connection with an attempt to collect a debt; (3) § 1692e(3) by deceptively implying that attorney had reviewed the debt account; (4) § 1692e(14) by using a name other than the true name of the debt collector's business; and (5) § 1692f(8) by unfairly using language, other than the debt collector's address, on an envelope when communicating with a debtor.

Plaintiff moves for summary judgment on Counts I and II; the Defendants move for summary judgment on all counts.

## II.  Legal Standard

Case No. 7:09-CV-00192
Gwin, J.

## A. Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A defendant moving for summary judgment has the initial burden of showing the absence of a genuine factual issue with respect to one or more essential elements of the plaintiff's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving defendant meets his burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quoting Fed. R. Civ. P. 56(c)). However, the moving defendant is under no "express or implied" duty to "support [his] motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving defendant satisfies his burden, the burden shifts to the nonmoving plaintiff to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The nonmoving plaintiff may not defeat the summary judgment motion merely by showing some existence of doubt as to the material facts. *See id.* at 586. Nor can the nonmoving plaintiff rely upon the mere allegations or denials of her pleadings. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). To be sure, the Court need not conclusively resolve an allegedly disputed issue in favor of the nonmoving plaintiff; rather, the plaintiff must present "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of

Case No. 7:09-CV-00192
Gwin, J.

the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Fair Debt Collection Practices Act

The question of whether a debt collector's action violates the FDCPA is determined objectively from the viewpoint of the "least sophisticated consumer." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998). This standard is intended to protect "the gullible as well as the shrewd." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). Even in "crafting a norm that protects the naive and the credulous" courts must "carefully preserve[] the concept of reasonableness." *Id.* (internal quotations omitted). The FDCPA does not aid consumers whose claims are based on "bizarre or idiosyncratic interpretations of collection notices." *Id.* In the Second Circuit, the least sophisticated consumer standard may be applied as a matter of law and thus is an appropriate issue for disposition on a motion for summary judgment. *See, e.g.*, *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003).

### III. Analysis

Plaintiff Herzlinger alleges in Counts I and II that the Defendants: (1) falsely threatened to take legal action in violation of § 1692e(5); and (2) used deception to collect a debt in violation of § 1692e(10).

The Court notes that, by virtue of the Plaintiff's three proposed classes,[3] the Plaintiff makes

---

[3] Plaintiff brings Counts I and II on behalf of:

Class A. All persons to whom . . . a collection letter written on Trans-Continental's letterhead in a form . . . substantially similar to the [Herzlinger] Letter [that] was sent by Defendants . . . .

-7-

Case No. 7:09-CV-00192
Gwin, J.

three distinct allegations with regards to both Counts I and II: (1) that the Herzlinger Letter itself violates the FDCPA (Class A); (2) that the Herzlinger Letter coupled with its enclosure in a Nichter envelope violates the FDCPA (Class A-1); and (3) that any correspondence written on Trans-Continental letterhead enclosed in a Nichter envelope violates the FDCPA (Class B). The Court will examine each theory.

### A. Class A: The Herzlinger Letter Itself

#### 1. Section 1692e(5)

The Court first considers whether the least-sophisticated consumer would interpret the Herzlinger Letter by itself as a "threat to take any action that cannot legally be taken or that is not intended to be taken." Plaintiff says the "clear import" of the Herzlinger Letter is that legal action has already been or is about to be initiated and that this is improper because the Defendants had not yet obtained formal authorization to sue from their client Greenwich Hospital. [Doc. 135 at 10-13.]

To establish a violation of § 1692e(5), Plaintiff must show that the Defendants (1) threatened to take action (2) that could not legally be taken or that was not intended to be taken. To determine whether a communication from a debt collector constitutes a threat, the court should "examine the clear import of the language to determine whether the least sophisticated consumer would believe that legal action has already been or is about to be initiated and can be averted from running its course only by payment." *Adlam v. FMS, Inc.*, No. 09-CV-9129, 2010 WL 1328958, at *2

---

Class A-1. All members of Class A to whom . . . a collection letter written on Trans-Continental's letterhead . . . substantially similar to the [Herzlinger] Letter was sent by Defendants enclosed in an envelope bearing Nichter's return address . . . .

Class B. All persons to whom . . . Defendants sent any correspondence on the letterhead of Trans-Continental enclosed in an envelope which identified Nichter as the sender/return-addressee . . . .

Case No. 7:09-CV-00192
Gwin, J.

(S.D.N.Y. Apr. 5, 2010) (internal quotation omitted). A threat exists where the least sophisticated consumer "would interpret th[e] language to mean that legal action was authorized, likely, and imminent." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

If the communication is merely informing the debtor that it is seeking repayment, § 1692e(5) will not have been violated. A communication that only advises a debtor that the collection agency has several options with which to pursue the debt will generally not be found to constitute a threat. *See Spira v. Ashwood Fin. Inc.*, 358 F. Supp. 2d 150, 160-61 (E.D.N.Y. 2005); *see also Knowles v. Credit Bureau of Rochester*, No. 91-CV-14S, 1992 WL 131107, at *1 (W.D.N.Y. May 28, 1992) (finding that the statement, "failure to pay will leave our client no choice but to consider legal action," "threatens no action whatsoever"). On the other hand, an explicit threat of litigation or an implication that legal action is inevitable, when such is not the case, will violate § 1692e(5). *See Wiener v. Bloomfield*, 901 F. Supp. 771, 775-76 (S.D.N.Y. 1995).

In this case, the "least sophisticated consumer" would not interpret the Herzlinger Letter standing alone to mean that legal action was authorized, likely, and imminent. The Letter's most direct language—"If we do not receive a call within the allotted time we will have few alternatives but to proceed with further action"—does nothing more than alert the debtor that this letter is just one of the many escalating steps in the debt collection process, a notion that in this day and age even the least sophisticated consumer understands. Indeed, the only "action" explicitly mentioned in the Herzlinger Letter is "credit reporting," not a lawsuit as the Plaintiff suggests. Along that vein, Plaintiff makes no claim that the Trans-Continental Defendants could not or did not intend to report her delinquency to the credit bureaus.

The Herzlinger Letter is similar to the letter analyzed in *Spira v. Ashwood Financial*, 358 F. Supp. 2d at 160-61. In *Spira*, the debt collection letter stated, "[i]t is our intent to pursue

-9-

Case No. 7:09-CV-00192
Gwin, J.

collection of this debt through every means available to us." *Id.* at 154. The *Spira* court held that the letter did not violate Section 1692e(5), as it merely advised the consumer that the debt collector may avail itself of its legal options. *Id.* 160-61. Here—like there— the least sophisticated consumer would interpret the Herzlinger Letter as merely informing the Plaintiff of the Defendants' intention to collect the debt. Accordingly, the Herzlinger Letter by itself does not violate § 1692e(5).

### 2. Section 1692e(10)

By extension, because the Herzlinger Letter does not make a threat it is not deceptive or misleading under § 1692e(10), the FDCPA "catch-all" provision that prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . ." 15 U.S.C. § 1692e(10). Of course, it is possible for a debt collection letter to violate none of the specific § 1692e subsections, yet still violate § 1692e(10). *See Cloman v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993). Here, however, the Plaintiff makes no attempt to show how her § 1692e(10) claim is any different than her § 1692e(5) claim, and thus both claims suffer the same fate. *See Kapeluschnik v. Leschack & Grodensky, P.C.*, No. 96-CV-2399, 1999 WL 33973360, at * 9 (E.D.N.Y. Aug. 26, 1999) (finding no violation of Sections 1692e(3), (5), and (10) for the same reasons).

The Court therefore grants summary judgment to the Defendants on Counts I and II insofar as these Counts are brought on behalf of Class A (individuals who received a letter similar to the Herzlinger Letter).

### B. Class A-1: Enclosure of the Herzlinger Letter in a Nichter Envelope

### 1. Section 1692e(5)

As to Class A-1, Plaintiff says that the Herzlinger Letter contained a threat of litigation based on the fact that the Letter was sent in an envelope stamped "CONFIDENTIAL" with a return address of "The Law Office of Mark L. Nichter." [Doc. 28-2 at 10.] Responding, the Defendants

Case No. 7:09-CV-00192
Gwin, J.

says that the Herzlinger Letter, even when sent in an envelope bearing an attorney's name, still does not falsely threaten legal action. [Doc. 115 at 112; Doc. 122 at 10; Doc. 128 at 10.]

In close cases, the fact that an attorney—as opposed to a debt collection service—sent the disputed letter "may create a sliding-scale which increases the sensitivity of the debtor to language in the letter threatening litigation." *Baptist v. Global Holding and Inv. Co.*, No. 04-CV-2365, 2007 WL 1989450, at *4 (E.D.N.Y. July 9, 2007); *see also Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1137 (N.D. Ill.1998) (noting that a letter signed by an attorney may signal to an unsophisticated consumer that legal action is at hand and that the source of the letter "can be determinative"). "Because to most consumers, the relevant distinction between a collection agency and an attorney is the ability to sue," a letter signed by an attorney signals to the unsophisticated consumer that legal action is at hand. *United States v. National Fin. Servs.*, 98 F.3d 131, 136-37 (4th Cir. 1996). The least sophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. *See Veillard v. Mednick*, 24 F. Supp. 2d 863, 867 (N.D. Ill. 1998).

The Court recognizes it is drawing a fine line, but finds that the least sophisticated consumer could interpret the Herzlinger Letter, when included in a lawyer's envelope, to believe legal action was authorized, likely, and imminent. Under this scenario, upon opening her mailbox, the first thing the consumer sees is a large envelope, sent from an attorney, marked confidential. With this in mind, the least sophisticated consumer does not interpret the Herzlinger Letter's reference to "additional remedies" to mean credit reporting. Instead, she likely reads "further action" to mean a lawsuit. Accordingly, the Court finds that the Herzlinger Letter, coupled with its enclosure in a Nichter envelope, threatens legal action.

The Court also finds that, as to Class A-1, the Herzlinger Letter threatens legal action that could not be taken. To be sure, the Defendants likely *intended* to sue the Plaintiff if their collection


Case No. 7:09-CV-00192
Gwin, J.

efforts were unsuccessful—Plaintiff was steadily employed as a police officer and a collectable $21,537.55 debt is worthy of suit. And the Trans-Continental Defendants did, in fact, commence litigation in a Virginia court. However, because § 1692e(5) is phrased in the disjunctive—that is, "action that cannot legally be taken *or* that is not intended to be taken"—the Plaintiff need only show that the action *could not legally* have been taken at the time the threat was made.

Here, the agreement between Trans-Continental and Greenwich Hospital says that Trans-Continental

> must have [Greenwich Hospital's] consent to forward or assign accounts to attorneys for legal action. Suit would not be instituted without [Greenwich Hospital's] specific authorization. Consent for any legal action against any assigned account must be given in writing by the Credit Manager or the Director of Patient Accounts prior to such action being taken.

[Doc. 123-7 at 2.] The Herzlinger Letter is dated October 23, 2008. [Doc. 120-11 at 3.] Yet creditor Greenwich Hospital did not authorize suit until February 18, 2009, four months later. [Doc. 120-22 at 2.] Thus, because the Defendants were not authorized to bring legal action, the Herzlinger Letter's false threat of suit violates § 1692e(5). *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-63 (2d Cir. 1993) (violation of § 1692e(5) where contract between creditor and collection agency explicitly provided that prior written authorization was required from creditor before collection agency could commence litigation).

### 2. Section 1692e(10)

Likewise, the Court finds that the Herzlinger Letter's enclosure in an attorney's envelope violates § 1692e(10), as well, because it creates the false impression that the creditor had authorized the Defendants to file suit to collect the debt. *See id.* (finding statements that violated § 1692e(5) to also be "false, deceptive, [and] misleading").

### 3. Section 1692k(c):  The Bona Fide Error Defense

Case No. 7:09-CV-00192
Gwin, J.

A debt collector may escape liability if it can demonstrate by a preponderance of the evidence that its violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, --- U.S. ---, 130 S.Ct. 1605, 1608 (2010) (citing 15 U.S.C. § 1692k(c)); *JeRussell v. Equifax A.R.S.*, 74 F.3d 30, 33-34 (2d Cir. 1996). To that end, the Nichter Defendants say that their involvement in this case stems only from the Trans-Continental Defendant's mistaken use of their envelope. Thus, the Nichter Defendants continue, such inadvertent involvement—akin to a mere "clerical mistake"—is protected by the bona fide error defense. [Doc. 115 at 13.] Likewise, the Trans-Continental Defendants say the error was an "isolated occurrence" on their part and also avail themselves to the bona fide error defense. [Doc. 122 at 18.]

Such a determination is a factual question that, in this case, the Court is unable to resolve based on the disputed facts before it. *See, e.g.*, *DeGeorge v. LTD Fin. Servs., L.P.*, No. 06-CV-178S, 2008 WL 905913, at *5 (W.D.N.Y. Mar. 31, 2008) ("And because Defendant's bona fide error defense is fact-dependent . . . that too must be presented to the jury."). The responses, if any, by potential members of Class A-1 (individuals who received a letter similar to the Herzlinger Letter in a Nichter Defendants envelope) will be probative of the existence *vel non* of the type of illicit policy that Plaintiff Herzlinger alleges. On this issue, a jury will likely find the size of the class particularly informative, especially if Class A-1 has one member (as Defendants suggest) or thousands (as is Plaintiff's contention).

Thus, although the Court finds that the Defendants violated Sections 1692e(5) and (10), neither side is entitled to summary judgment on this issue because material issues of fact remain as to whether the bona fide error defenses shields the Defendants from liability.

-13-

Case No. 7:09-CV-00192
Gwin, J.

### C. Class B:  Any Correspondence Written On Trans-Continental Letterhead Enclosed in a Nichter Envelope

#### 1. Section 1692e(5)

Again, to establish a violation of § 1692e(5), Plaintiff must show that the Defendants threatened to take action that could not legally be taken.  Under this somewhat confusing (and perhaps unintentional) theory, the Plaintiff suggests that *any* correspondence on Trans-Continental letterhead mailed in a Nichter envelope violates Section 1692e(5).  Of course, because "any correspondence" necessarily includes correspondence that makes no threat at all, the Court grants summary judgment to the Defendants on Plaintiff's § 1692e(5) claim as it relates to Class B.

#### 2. Section 1692e(10)

Likewise, because the FDCPA prohibits only the use of "false, deceptive, or misleading representation or means *in connection with the collection of any debt*," 15 U.S.C. § 1692e(10) (emphasis added), and "any correspondence" necessarily includes correspondence not designed to collect a debt,  the Court grants summary judgment to the Defendants on Plaintiff's § 1692e(10) claim as it relates to Class B.

### D. Joint, Several, and Individual Liability

Plaintiff Herzlinger says that the Nichter and Trans-Continental Defendants operate an illicit "joint masquerade" and are jointly and severally liable.  Plaintiff also says that because Trans-Continental's President Stuart Bloom is a "debt collector" as defined by § 1692a(6), he too is personally liable.

#### 1. Joint and Several Liability

The Nichter Defendants say that their involvement in this case stems only from the Trans-Continental Defendants mistaken use of their envelope.  And, accordingly, they cannot be held liable

Case No. 7:09-CV-00192
Gwin, J.

for Trans-Continental's actions under a vicarious liability theory or an alter-ego theory. Plaintiff says that "Nichter's liability is established both through the overall operation of the TCC/Nichter business and through the actual involvement of Nichter in the handling of the Herzlinger account." [Doc. 135 at 15.]

The Nichter Defendants' vicarious liability and alter ego arguments are well taken. Under general principals of agency—which form the basis of vicarious liability—the principal must exercise control over the conduct or activities of the agent. Plaintiff Herzlinger has offered no evidence upon which a reasonable trier of fact could conclude that the Nichter Defendants (as principal) exercised control over the Trans-Continental Defendants (as agent).

As to an alter ego theory, Plaintiff's supporting evidence consists only of the Defendants' shared office space, resources, and employees, and that Nichter does some of Trans-Continental's legal work. These facts, without more, are insufficient to overcome the "presumption of separateness . . . which is entitled to substantial weight." *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1998). Before finding that two distinct entities are alter egos, a reasonable trier of fact must consider the absence of corporate formalities, movement of funds between the two entities, overlap in ownership and directors, amount of business discretion of each entity, and whether the two entities are independent profit centers. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991). Plaintiff does not address these factors, yet all cut against her. For example, there is no evidence that Trans-Continental has any ownership interest in the Nichter Defendants. And although the Defendants share some employees, each employee receives a separate paycheck and W-2 from Nichter and Trans-Continental. Finally, neither Nichter nor Trans-Continental works exclusively with or for the other—indeed, in this case Trans-Continental ultimately referred the Herzlinger account to another attorney for collection.

Case No. 7:09-CV-00192
Gwin, J.

Even viewing this evidence in the light most favorable to Plaintiff, the Court concludes that she has failed to set forth sufficient evidence to raise an issue of fact indicating that the Nichter and Trans-Continental Defendants should be treated as one entity. Accordingly, the Court grants the Nichter Defendants motion for summary judgment insofar as it is based on the issue of corporate separateness. This finding, however, does not absolve the Nichter Defendants of their involvement in this case. Recall, the Court has already determined that the Defendants violated the FDCPA when their joint employee sent the Herzlinger letter in a Nichter envelope. Thus, for the reasons already discussed, a jury will determine the Nichter Defendants' ultimate liability upon consideration of the bona fide error defense.

### 2. Stuart Bloom's Liability

Defendant Stuart Bloom argues that he is not liable under the FDCPA as he did not personally engage in the Herzlinger matter. [Doc. 122 at 8.] Responding, Plaintiff says Bloom is the "mastermind" behind the Trans-Continental and Nichter operations. [Doc. 136 at 26-29.]

"The FDCPA allows a finding of liability under the Act for officers and employees of a collection business." [Doc. 43 at 2 (Magistrate Judge Paul E. Davison's Order granting Plaintiff's motion to amend her complaint (*citing Ostrander v. Accelerated Receivables*, No. 07-CV-827C, 2009 WL 909646, at *7 (W.D.N.Y. Mar. 31, 2009))).] However, where the defendant sought to be held liable is a high-ranking employee, executive, or director, the plaintiff must show that the defendant personally engaged in prohibited conduct. *See Williams v. Professional Collection Servs., Inc.*, No. 04-CV-286, 2004 WL 5462235, at *4 (E.D.N.Y. Dec. 7, 2004).

Here, Plaintiff says Bloom's "affirmative acts" are: (1) he "felt there was 'nothing wrong' with [Trans-Continental's collection] letters" and did not change them; (2) he is "'in the office pretty much daily'"; (3) he is "solely in charge of hiring . . . [debt] collectors"; and (4) he "assesses

-16-

Case No. 7:09-CV-00192
Gwin, J.

accounts for possible suit recommendation and he is responsible for assessment of the content of collection letters used by [Trans-Continental]." [Doc. 136 at 21-23.] This conduct, of course, is entirely consistent with Bloom's role as Trans-Continental's president. Moreover, because the Court has already determined that the content of the Herzlinger Letter standing alone does not violate the FDCPA, only Bloom's personal involvement *in its mailing* could give rise to personal liability. As such, because Plaintiff seeks to hold Bloom personally liable simply by virtue of his position in the company, the Court grants Defendant Bloom's motion for summary judgment insofar as it is based on his theory that he should not be held personally liable under the FDCPA and dismisses all counts against Stuart Bloom.

### IV. Conclusion

For the foregoing reasons, the Court:

(1) **DENIES** Plaintiff's motion for summary judgment but finds as a matter of law that the Defendants have violated Sections 1692e(5) and (10) with respect to Class A-1, as alleged in Counts I and II;

(2) **GRANTS** Defendants' motions for summary judgment on Counts I and II with respect to Classes A and B;

(3) **DENIES** Defendants' motions for summary judgment insofar as they are based on the bona fide error defense;

(4) **GRANTS** the Nichter Defendants' motion for summary judgment insofar as it is based on the issue of corporate separateness; and

Case No. 7:09-CV-00192
Gwin, J.

(5) **GRANTS** Stuart Bloom's motion for summary judgment and dismisses all claims against Stuart Bloom.

    IT IS SO ORDERED.

Dated: February 9, 2011

                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE